**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**JUL 2 4 2012**

CLERK

|  |  |  |
|---|---|---|
| RICHARD LITSCHEWSKI, | * | CIV. 11-4105-RAL |
| NANCY LITCHEWSKI, | * | |
| AARON LITCHEWSKI, | * | |
| DARCY LITCHEWSKI, | * | |
| ARICA OVERBY, and | * | OPINION AND ORDER GRANTING |
| STEVE OVERBY, | * | DEFENDANTS' MOTION FOR |
|  | * | SUMMARY JUDGMENT AND |
| Plaintiffs, | * | DENYING ALL OTHER PENDING |
|  | * | MOTIONS AS MOOT |
| vs. | * | |
|  | * | |
| ROBERT DOOLEY, Warden, Mike Durfee | * | |
| State Prison, JOHN DOES, JANE DOES, | * | |
| MELINDA JOHNSON, Records | * | |
| Administrator, South Dakota State | * | |
| Penitentiary, and | * | |
| UNNAMED CONSTRUCTION CO., | * | |
|  | * | |
| Defendants. | * | |

Plaintiff, Richard Litchewski, filed a pro se civil rights lawsuit against Defendants, Warden

Robert Dooley of the Mike Durfee State Prison, John and Jane Does, Melinda Johnson, who is

employed as the records administrator at the South Dakota State Penitentiary, and Unnamed

Construction Company.[1]  Defendants move for summary judgment, which Litchewski opposes.[2]

---

[1] Although Richard Litchewski was the only plaintiff to sign the Complaint and the Amended Complaint, he appears to be attempting to add family members as co-plaintiffs. Pro se litigants may not represent the interests of other parties. See, e.g., Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").

[2] Defendants filed a 45-page brief in support of their motion for summary judgment, without moving to file an over-length brief. The Court wishes to remind Defendants, who are represented by the South Dakota Attorney General's Office, that pursuant to Civ. D.S.D. LR 7.1.B.1 briefs "shall not exceed 25 pages or 12,000 words unless prior approval has been obtained from the court."

## I. FACTUAL BACKGROUND

In the light most favorable to Litchewski, the non-moving party, the facts are as follows: Litchewski is incarcerated at the Mike Durfee State Prison ("MDSP") in Springfield, South Dakota, as a result of his convictions for first degree rape, third degree rape, and sexual contact with a child. The other Plaintiffs are family members who traveled to the MDSP to visit Litchewski, on or about July 15, 2011.

Because Litchewski is a convicted sex offender, he is required to participate in the Special Treatment of Sex Offenders ("STOP") program. Participation in STOP is a condition of the Individual Program Directive ("IPD") for every convicted sex offender in the South Dakota Department of Corrections ("SDDOC"). Litchewski asserts that because he is an "old law inmate," he is not subject to the IPD, but concedes that he is required to participate in STOP one-year prior to parole eligibility. The goal of the STOP program is to provide a sex offender with the attitudes and behaviors necessary to return to the community without reoffending. As an incentive to encourage inmates such as Litchewski to participate in sex offender treatment, the SDDOC imposes consequences on those who refuse treatment. In particular, non-compliant sex offenders are restricted to Class II visits, which are those "conducted with the inmate physically separated from the visitor in a glassed off area located within the visiting room." See Doc. 39-5, Inmate Visiting Policy. But if a non-compliant sex offender returns to the STOP program, he can be restored to Class I (contact) visits under SDDOC policy. Litchewski has refused to participate in the STOP program. Litchewski first signed a program refusal form on August 12, 1999, and another on September 3, 1999. To this date, Litchewski refuses to participate in the STOP program.

2

If an inmate disagrees with a decision regarding restricted visits, he may appeal that decision through the administrative remedy procedure. Litchewski filed an Informal Resolution Request on September 8, 1999, complaining that he was "taken off the waiting list of STOP by refusing. This is not allowing me to visit my child." Doc. 39-2. Litchewski also asserted that "I do not care about other parts of Policy 2E.1, but taking away visits with a child after 2 [years] who is not a victim is simply an added punishment." Id. Litchewski subsequently filed a Request for Administrative Remedy on September 14, 1999, again complaining that "visitation with my child was terminated" and arguing that "refusing my visits violates First Amendment rights and due process for me and my child." Doc. 39-3. Litchewski was informed in an Administrative Remedy Response, dated September 24, 1999, that he fell under the guidelines of SDDOC Policy 2.E.1 because he refused to participate in the STOP program. SDDOC Policy 2.E.1. provided that "non-compliant sex offenders who had a victim under 18 years of age will be restricted to class II visits." Doc. 39-17 at 2. This policy was subsequently replaced by SDDOC Policy 1.3.C.9, Sex Offender Restrictions, on or about November 4, 2011. On September 13, 2011, Litchewski again asked for "visits to be restored with his daughter Arica" via another Informal Resolution Request. Despite these requests, Litchewski never challenged his restriction to Class II (non-contact) visits because of his refusal to participate in the STOP program. See Doc. 39-24, Aff. of Warden Dooley, at ¶ 11.

In addition to encouraging convicted sex offenders to participate in the STOP program, the SDDOC's restriction of the visiting privileges of non-compliant sex offenders is designed to ensure the safety of any children present in the area where Class I (contact) visits are held. A non-compliant sex offender who refuses to participate in treatment is considered an inherent risk if

3

allowed unfettered physical access to young children. See Doc 39-24, Aff. of Warden Dooley, ¶

¶ 21, 24. ₃

### A. Litchewski's Class I Visits Claim/Parole Date Claim

Litchewski first complains that Defendant Melinda Johnson "was responsible for having

took [sic] around five years of Class I visits, from about 1999 to 2005, that should not have been

taken but due to their mistakes and negligence." Doc. 19. Litchewski asserts that when he entered

the prison that he was "initially given a parole date of 2001." Doc. 19. The 2001 parole date was

erroneous; Litchewski's three convictions initially were treated as one felony with multiple counts

because multiple judgments were under one docket number. The practice at the time in the Central

Records Office was to treat such sentences as one felony since they were under the same docket

number. On November 14, 2009, the Central Records Office notified Litchewski that his parole

date had been changed "due to receiving clarification that his sentence was to be treated as three

separate felonies." Thus, Litchewski's parole date was changed from July 12, 2001 to May 16,

2005.

Litchewski was not the only inmate affected by this change. The Central Records Office,

pursuant to SDDOC policy 1.4.G.2, Inmate Release Procedure, audited another inmate in

September 2008, who was scheduled to be released on parole. Pursuant to that policy, SDDOC

Central Records staff recalculate the release date for an inmate eligible for discretionary parole.

If there is any change to the calculated parole date, the Central Records staff sends a memo to the

inmate and unit staff. The other inmate had also been sentenced on multiple judgments and staff

---

³ Litchewski was allowed a Class I (contact) visit on one occasion with his mother, Betty Litchewski, and his sister, Carol Johnson. At the time, Litchewski's mother was ill. Warden Dooley allowed the Class I visit out of concern that Litchewski's mother's health issues would prevent her from visiting her son in the future.

4

discovered that the separate judgments were to be treated as multiple felonies for purposes of parole eligibility. Based on that case, the SDDOC decided to make similar inquiries on all old and new system inmates who had been sentenced on multiple counts. Litchewski was identified through this process as an inmate serving time for convictions on multiple counts.

Defendant Melinda Johnson contacted the local state's attorney's office to clarify "what you believe the Court's intentions were concerning the purpose of three separate judgments" in Litchewski's case. Walworth County State's Attorney Grant L. Walker informed Johnson that "Mr. Litchewski was convicted of three separate felonies and should be treated as three separate felonies." Doc. 39- 21. Litchewski asserts that Walker did not prosecute him, but that the South Dakota Attorney General's Office handled his case. Litchewski's parole date was then corrected, pursuant to SDCL 24-15-3, which provides that an inmate's parole date is "subject to change upon receipt of information regarding a change in the number of prior felony convictions or any subsequent felony convictions." Litchewski disputes that this statute is applicable to his case because "there was no change in the number of felony convictions, just a policy practice and policy revision." Doc. 51 at 13.

On April 2, 2009, Litchewski submitted an Informal Resolution Request complaining that the November 14, 2008 memo "changes sentence good time calculation." Doc. 39-7. Litchewski was informed that his request was untimely; under SDDOC Policy 1.3.A.2, inmates have only thirty days in which to initiate the administrative remedy process. Id. After he filed the present lawsuit, Litchewski filed another Informal Resolution Request on February 3, 2012, alleging that "Central Records Supervisor Melinda Johnson had me eligible for parole 2001. This forced me into Class II visits in 2000." Doc. 39-8. This request was again denied as untimely. Although

5

Litchewski claims that the SDDOC "owes [his] family and [him] for the five years of loss of Class I contact visits," Litchewski was not permitted Class I visits solely because of his continued refusal to participate in sex offender treatment. He was permitted Class II visits with designated family members during the entire time period.

### B. The Denial of a Class II visit on July 15, 2011

Litchewski's second claim relates to the cancellation of a visit with family members on July 15, 2011. All Class II visits at MDSP were canceled on the weekend of July 15, 2011, due to concerns for the safety of visitors. During the time in question, the visitor's parking lot at the MDSP was undergoing repairs. On the morning of July 15, 2011, the contractor notified staff that they had been unable to make the progress necessary to have the visitor parking lot available for visitor parking that weekend because of the large amount of rain that fell that week. Doc. 39-9. The work being done on the visitor's parking lot restricted access to the visitor's entrance. Therefore, staff believed that allowing visitors access to the area under construction posed significant safety concerns. Thus, all Class I visits were moved to the armory that weekend. That area was not under construction and access to the armory did not compromise the safety of those visiting the MDSP. But the armory was not physically equipped to handle Class II visits because there was no way of physically separating the inmates and preventing them from having physical access to their visitors as required during Class II visits. Because there was no way to physically accommodate Class II visits in the armory area, all Class II visits were cancelled for that weekend. Litchewski contends that "there was ample time to make arrangements to provide the Litchewski family some short reasonable visit." Doc. 51 at 15. MDSP staff immediately notified all inmates restricted to Class II visits that were affected by the decision and offered them the opportunity to

6

make any necessary phone calls. Litchewski disputes this, alleging that "no phone calls were offered upon canceling of the Class II visit" and that he was not offered an opportunity to call his family until well after the fact. Id.

Litchewski also disputes the validity of defendants' concerns for visitor safety. Id. at 15. Litchewski argues that "several areas could have been utilized with little effort to provide the Litchewskis even the shortest of times to visit . . . while still separating the inmate from their [sic] visitors" and preventing contact. Id. Litchewski specifically suggests that classrooms with tables or cage barriers could have been used, the armory ticket booth, or the attorney visit room could have been utilized. Id. at 17.

Litchewski was extremely upset by the cancellation of Class II visits that weekend. He confronted MDSP staff and demanded that accommodations be made so he could visit his son that weekend. Staff told him that his concerns had been discussed with Warden Dooley and other senior staff and that the decision to cancel all Class II visits would stand. The construction project that forced the MDSP to cancel Class II visits that weekend was finished on or about August 1, 2011, and Class II visits were immediately restored. During the entire construction project, Class II visits were only cancelled once – July 15, 2011.

### C. Retaliation Claim

Litchewski's final allegation is that he was "put in SHU" in retaliation for complaining about the temporary cancellation of Class II visits. A review of Litchewski's file shows that an Administrative Detention Order was issued on August 3, 2011, placing Litchewski in the SHU pending an investigation into threats he made against Diane Romkema, a case manager at the MDSP. See Doc. 39-12, Administrative Detention Order. Unit Staff received information that

Litchewski was upset about the visits being canceled and that Litchewski "hates CM Diane Romkema" and threatened that "if he ever got a chance to smash her head against a wall when cameras were not present, he would." Doc. 39-13. Litchewski disputes this, asserting that "the only threat Litchewski ever made was to sue" and arguing that "he has no record of violence in 14 years." Doc. 51 at 21. On August 4, 2011, staff questioned Litchewski about the threats. Litchewski denied making any threats, saying he was "too smart" to do something like that, but did repeatedly state that he "hated" Romkema. Doc. 39-23.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts

8

by affidavits or otherwise show that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure applies to prisoner litigants, despite the liberal construction afforded to their pro se pleadings. Quam v. Minnehaha Cnty. Jail, 821 F.2d 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems. Nickens v. White, 622 F.2d 967, 971 (8th Cir.1980), cert. denied, 449 U.S. 1018 (1980). "When dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir.1985).

## III. DISCUSSION

### A. Litchewski has not alleged the capacity in which he sues Defendants

Neither Litchewski's original nor amended complaint clearly indicate the capacity in which he is suing Defendants. Doc. 1; Doc. 19. Prison officials may be sued in both their official and individual capacities. Thus, as a threshold matter this Court must consider whether the case is proceeding against Defendants in their individual or official capacities or both.

Defendants correctly assert that in the Eighth Circuit "absent a clear statement that officials are being sued in their personal capacities," a complaint under § 1983 is interpreted as including only official capacity claims. Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997); Nix v. Norman, 879 F.2d 429, 430-31 (8th Cir. 1989). But the plaintiffs in the cases cited by

Defendants were represented by attorneys; Litchewski is proceeding pro se. Pro se complaints are held to less stringent standards than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519 (1972). But pro se litigants must still comply with the Federal Rules of Civil Procedure. Quam, 821 F.2d at 522.

Rule 9(a)(1) of the Federal Rules of Civil Procedure provides, *"Except when required to show that the court has jurisdiction*, a pleading need not allege a party's capacity to sue or be sued." Fed. R. Civ. P 9(a)(1)(A) (emphasis added). The Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees. Rose v. State of Nebraska, 748 F.2d 1258, 1262 (8th Cir. 1984), cert. denied, 474 U.S. 1014 (1985) (citing Edelman v. Jordan, 415 U.S. 651, 678 (1974)). Thus, Rule 9(a) appears to require Litchewski to make a capacity allegation in the complaint. See Nix, 879 F.2d at 431. Because he has not done so, this Court construes his complaint as solely alleging claims against Defendants in their official capacities.

### B. Litchewski's claim for money damages is barred by the Eleventh Amendment

Litchewski's claim for money damages is barred. A claim against an individual state actor in his official capacity is in reality a complaint against the state. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 (1978)). An action is barred by the Eleventh Amendment if the state has not consented to suit because its immunity has not been abrogated by Congress. See Quern v. Jordan, 440 U.S.332 (1979) (holding the passage of the Civil Rights Act of 1871 did not abrogate immunity under the Eleventh Amendment). Moreover, neither a state nor its officials acting in their official capacities are considered "persons" who may be sued for money damages under § 1983. Lapides v. Bd. of

10

Regents, 535 U.S. 613, 617 (2002); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

Accord McLean v. Gordon, 548 F.3d 613, 618 (8th Cir. 2008) (reversing denial of summary

judgment for state official under § 1983 even where sovereign immunity was waived by removal

to federal court). Because South Dakota has not consented to suit and its officials acting in their

official capacities may not be sued for damages under § 1983, Litchewski's damages claim is

barred. A state official, however, may be sued in his or her official capacity for injunctive relief

under § 1983. Will, 491 U.S. at 71 n.10. Thus, this Court next considers Litchewski's claims for

injunctive relief.

### C. Litchewski has failed to exhaust his administrative remedies

The Prison Litigation Reform Act of 1996 (PLRA) provides that:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in [federal] court." Jones v. Bock, 549 U.S. 199, 211 (2007)

(citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). The PLRA requires "immediate dismissal"

of all unexhausted claims. Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005). Before filing this

action, Litchewski was required to fully and properly exhaust his administrative remedies as to

*each claim* in the complaint. See Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003) ("If

exhaustion was not completed at the time of filing, dismissal is mandatory."); Graves v. Norris,

218 F.3d 884, 885 (8th Cir. 2000) ("When multiple prison condition claims have been joined . .

. the plain language of § 1997e(a) requires that all available prison grievance remedies must be

11

exhausted as to all of the claims."). In order to properly exhaust administrative remedies, Litchewski was required to fully comply with the MDSP's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 95 (2006). In other words, Litchewski is required to "tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process." Rothman v. Lombardi, No. 4:11CV639, 2012 WL 639713 at *2 (E.D. Mo. Feb. 27, 2012) (citations omitted).

The SDDOC has a two-part administrative remedy process. The first step is for an inmate to talk to his/her unit staff and then, if the problem is not resolved, he or she must file an Informal Resolution Request form and submit it to the Unit Coordinator. See Doc. 38-14, SDDOC Policy 1.3.E.2, Administrative Remedy for Inmates, at 3-4. The second step requires an inmate to file a Request for Administrative Remedy form within 5 working days of the day he or she submitted the Informal Resolution Request. Id. at 4. The policy provides that the inmate will be provided with a response within 30 working days of the day the Request for Administrative Remedy Form is received. Id.

Defendants argue that Litchewski did not properly exhaust administrative remedies with respect to his claim that restricting him to Class II visits violates his constitutional rights and his family's constitutional rights. SDDOC Policy 1.3.C.9, Sex Offender Restrictions, provides that "[i]f an inmate disagrees with a decision regarding restricted visits, he/she may follow the administrative remedy procedure." See Doc. 38-1 at 3. Warden Dooley reviewed Litchewski's file and determined that Litchewski did not file a grievance to challenge the decision to restrict him to Class II visits. See Doc. 39-24, Aff. of Warden Dooley, at ¶ ¶ 14-15. On September 8, 1999, Litchewski submitted an Informal Resolution Request noting that due to his refusal to participate

in STOP, he was not allowed to "visit his child." Doc. 39-2. Litchewski asserted that "I do not care about the other parts of Policy 2.E.1 but taking away visits with a child . . . who is not a victim is simply added punishment." Id. On September 14, 1999, Litchewski submitted a Request for Administrative Remedy Form on the same issue. See Doc. 39-3. Thus, the record demonstrates that Litchewski did not file a formal grievance with regard to having been restricted to Class II visits. This is fatal to his claim. See Jones, 549 U.S. at 220 (noting that "no unexhausted claim may be considered").

Defendants also argue that Litchewski has failed to properly exhaust administrative remedies regarding his claim that he was improperly deprived of Class I visits for 5 years. Litchewski was notified on November 14, 2008, that his release dates had been recalculated and that his initial parole eligibility date should have been May 16, 2005. Plaintiffs contend that but for this "error" in calculating Litchewski's parole eligibility date, he would not have had to refuse participation in the STOP program until 2005. Litchewski has been confined to Class II (non-contact) visits because of his refusal to participate in STOP during his incarceration. Thus, Litchewski contends, absent his refusal to participate in sex offender treatment, he would have been eligible for Class I visits from 1999 to 2005. But Litchewski did not properly exhaust his administrative remedies.

On April 2, 2009, Litchewski attempted to file an Informal Resolution Request in connection with the "Memo dated 11-14-08 changing sentence good time calculation." Doc. 39-7. Staff informed Litchewski that his request was untimely because inmates only have 30 days from the date of the alleged incident in which to initiate the administrative remedy procedure. Id. After filing the complaint, Litchewski submitted another Informal Resolution Request on February 3,

13

2012. In that request, Litchewski complained that "central records supervisor Melinda Johnson had me eligible for parole 2001. This forced me into Class II visits in 2000." Doc. 39-8. As previously discussed, the PLRA requires inmates to comply with an agency's deadlines and other critical procedural rules. King, 792 F.Supp.2d at 1067. Litchewski's failure to comply with the SDDOC's grievance process is fatal to his claim.[4] Thus, Defendants are entitled to summary judgment on Litchewski's claim that restricting him to Class II visits violates his constitutional rights and his family's constitutional rights and his claim that he was improperly deprived of Class I visits for 5 years.

### D. Litschewski's retaliation claim fails

Litchewski's final claim is a retaliation claim. Litchewski alleges that "I was put in SHU and my papers lost- retaliation." In his response to the Defendants' motion for summary judgment, Litchewski asserts that "there were multiple incidents of retaliation," but does not identify any other incidents. Doc. 51 at 19.

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction [or otherwise take adverse action] against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'" Meuir v. Greene Cnty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993)). To establish

---

[4] Litchewski also attempted to raise this claim in state court. On January 14, 2010, the Honorable Glen W. Eng also found that Litchewski failed to exhaust administrative remedies. "Appellant received notification of the recalculation on November 26, 2008. An Administrative Remedy Request was made on April 23, 2009, nearly five months later." Doc. 68-4 at 1. Thus, the court found that the court lacked subject matter jurisdiction to review the SDDOC's recalculation of his parole eligibility date. "[I]n order for this court to consider the appeal the appellant must follow the procedure established by the administrative agency. Specifically, the appellant was required to request an administrative remedy within 30 days of the incident giving rise to the complaint." Id. at 2.

14

a prima facie case of retaliatory discipline, Litchewski must show that "(1) [he] exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009). To avoid summary judgment on his retaliatory discipline claim, Litchewski "must submit 'affirmative evidence [of] a retaliatory motive.'" Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (internal citations omitted). In other words, Litchewski must submit evidence that, "but for a retaliatory motive the prison official[s]" would not have disciplined him. Haynes, 588 F.3d at 1156 (citing Goff, 7 F.3d at 737). But "if the discipline which the prisoner claims was retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994). Thus, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008).

An Administrative Detention Order was issued on August 3, 2011, indicating that Litchewski was being placed in the Special Housing Unit ("SHU") pending an investigation into threats he allegedly made against case manager Diane Romkema. Doc. 39-12. Staff at MDSP received information that Litchewski was "upset about his Class II visit being canceled due to the road construction and he just won't let things go." Doc. 39-13. According to the information provided, Litchewski "hates CM Diane Romkema" and threatened that "if he ever had a chance to smash her head against a wall when cameras were not present, he would." Id. Litchewski denies these allegations.

15

Defendants assert that Litchewski's placement in the SHU away from the general population was non-punitive and that he has, therefore, failed to present any affirmative evidence of a retaliatory motive on their part. A prison may have a "need to segregate individual inmates from the general prison population for non-punitive reasons; for example, where the inmate is held pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution." Brown-El v. Delo, 969 F.2d 644, 647 (8th Cir. 1992). Without a showing of an intent to punish by prison officials, whether an inmate is segregated for "punitive" reasons or for administrative purposes turns on whether the detention is reasonably related to a legitimate government objective. Bell v. Wolfish, 441 U.S. 520, 538-39 (1979). If the decision to segregate is arbitrary or purposeless, a court may "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon [inmates]." Id.; see also Williams v. Ferguson, No. 08-5144, 2010 WL 1294090 at *7 (W.D. Ark. Mar. 3, 2010) ("The issue in this case is whether [plaintiff] was placed in 'administrative segregation' throughout his incarceration . . . for punitive reasons. Clearly there may be permissible non-punitive reasons for confining [inmates] to administrative segregation."). In this case, Defendants received information from a confidential informant that Litchewski "hates" a case manager, had ongoing problems with her, threatened to assault her, and that he "won't let things go." Doc. 39-13. The prison employee who received the information noted that although "this particular CI has not provided me with much information in the past . . . I have never found him to be deceitful." Id. "[T]he safety of the institution's guards . . . is perhaps the most fundamental responsibility of the prison administration." Hewitt v. Helms, 459 U.S. 460, 473 (1983), abrogated in part by Sandin v. Conner, 515 U.S. 472 (1995)). Litchewski himself acknowledged hating the prison employee

16

when staff interviewed him about the report. Doc. 39-23. Thus, Defendants had a legitimate, non-punitive reason for placing Litchewski in the SHU pending the outcome of the investigation into his alleged threats. Therefore, Litchewski cannot show that "but for a retaliatory motive the prison official[s]" would not have placed him in the SHU and his retaliation claim fails. Consequently, Defendants are entitled to summary judgment on Litchewski's retaliation claim.

## IV. CONCLUSION AND ORDER

Litchewski failed to allege the capacity in which he sues Defendants. Thus, under Eighth Circuit precedent, his Complaint is interpreted as alleging only official capacity claims. Defendants are entitled to summary judgment on Litchewski's claims for money damages because it is barred by sovereign immunity. Litchewski has also asserted claims for injunctive relief, which also fail.

Because Litchewski failed to properly exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a), Defendants are entitled to summary judgment on Litchewski's claim relating to the denial of 5 years of Class I (contact) visits and Litchewski's claim that he and his family were improperly denied a Class II (non-contact) visit the weekend of July 15, 2011. Defendants are entitled to summary judgment on Litchewski's retaliation claim because his temporary placement in the SHU was done for a non-punitive reason, i.e., to investigate threats he allegedly made against a case manager at the MDSP. Thus, Litchewski has failed to show that but for a retaliatory motive, Defendants would not have placed him in the SHU and his claim fails. Therefore, it is hereby

ORDERED that Defendants' motion for summary judgment (Doc. 37) is granted. It is further

17

ORDERED that all other pending motions (Doc. 40; Doc. 42; Doc. 44; Doc. 46; Doc. 47;

Doc. 48; Doc. 49; Doc. 55) are denied as moot.

Dated July 24, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

18